UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARC LEBLANC,

     Plaintiff,

     v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

     Defendant.

No.  2:14-CV-00412-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

     Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 15 & 20. Mr. Leblanc brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C §§ 401-434.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

### I.    Jurisdiction

Mr. Leblanc filed his application for Disability Insurance Benefits under Title II on August 19, 2011. AR 196. His alleged onset date was January 16, 2002. *Id.* His last date insured was December 31, 2007. *Id.* His application was initially denied on November 14, 2011, AR 104-106, and on reconsideration on March 28, 2012, AR 110-111.

A hearing with Administrative Law Judge ("ALJ") James W. Sherry occurred on April 16, 2013. AR 42-88. On May 9, 2013, the ALJ issued a decision finding Mr. Leblanc ineligible for disability benefits under Title II. AR 22-36. The Appeals Council denied Mr. Leblanc's request for review on October 23, 2014, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Leblanc timely filed the present action challenging the denial of benefits on December 22, 2014. ECF No. 1. Accordingly, Mr. Leblanc's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

### II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

1    under a disability only if the claimant's impairments are of such severity that the

2    claimant is not only unable to do his previous work, but cannot, considering

3    claimant's age, education, and work experience, engage in any other substantial

4    gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

5    1382c(a)(3)(B).

6         The Commissioner has established a five-step sequential evaluation process

7    for determining whether a claimant is disabled within the meaning of the Social

8    Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

9    *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

10        Step one inquires whether the claimant is presently engaged in "substantial

11   gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

12   activity is defined as significant physical or mental activities done or usually done

13   for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

14   substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

15   404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

16        Step two asks whether the claimant has a severe impairment, or combination

17   of impairments, that significantly limits the claimant's physical or mental ability to

18   do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

19   impairment is one that has lasted or is expected to last for at least twelve months,

20   and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 &

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 3**

1    416.908-09.  If the claimant does not have a severe impairment, or combination of

2    impairments, the disability claim is denied, and no further evaluative steps are

3    required.  Otherwise, the evaluation proceeds to the third step.

4        Step three involves a determination of whether any of the claimant's severe

5    impairments "meets or equals" one of the listed impairments acknowledged by the

6    Commissioner to be sufficiently severe as to preclude substantial gainful activity.

7    20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

8    20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or

9    equals one of the listed impairments, the claimant is *per se* disabled and qualifies

10   for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to

11   the fourth step.

12       Step four examines whether the claimant's residual functional capacity

13   enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f)

14   & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant

15   is not entitled to disability benefits and the inquiry ends.  *Id.*

16       Step five shifts the burden to the Commissioner to prove that the claimant is

17   able to perform other work in the national economy, taking into account the

18   claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

19   404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

20   burden, the Commissioner must establish that (1) the claimant is capable of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

1992).  If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by

inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

2002) (if the "evidence is susceptible to more than one rational interpretation, one

of which supports the ALJ's decision, the conclusion must be upheld").  Moreover,

a district court "may not reverse an ALJ's decision on account of an error that is

harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is

inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings

and only briefly summarized here.  Mr. Leblanc was 38 years old on the date last

insured. AR 34, 196. He can read and understand English. AR 35, 199. He has an

associate's degree in residential plumbing and a bachelor's degree in social work.

AR 201.

The record demonstrates that Mr. Leblanc has or had left knee patellar

chondromalacia, status post arthroscopic repair, degenerative disc disease of the

lumbar spine, depression and anxiety, and gastroesophageal reflux disease. AR 27-

28, 436-441.  Mr. Leblanc has past relevant work experience as a plumber. AR 34.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

# V.    The ALJ's Findings

The ALJ determined that Mr. Leblanc was not under a disability within the meaning of the Act from January 16, 2002, through the date last insured. AR 25.

**At step one**, the ALJ found that Mr. Leblanc had not engaged in substantial gainful activity from January 16, 2002, the alleged onset date, and December 31, 2007, the date last insured (citing 20 C.F.R. §§ 404.1571*)*. AR 27.

**At step two**, the ALJ found Mr. Leblanc had the following severe impairments: left knee patellar chondromalacia, status post arthroscopic repair, and degenerative disc disease of the lumbar spine (citing 20 C.F.R. §§ 404.1520(c)). AR 27.

At **step three**, the ALJ found that Mr. Leblanc did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 29.

At **step four**, the ALJ found Mr. Leblanc had the residual functional capacity to perform light work, as defined in 20 C.F.R. 404.1567(b), with an ability to lift/carry twenty pounds occasionally and ten pounds frequently; sit for six hours during an eight-hour workday; stand/walk for six hours during the same time period; and push/pull within his lifting restrictions. Additionally, Mr. Leblanc could occasionally climb ramps/stairs, balance, stoop, crouch, and crawl, but he could never climb ropes, ladders, or scaffolds. He would be required to avoid

concentrated exposure to extreme cold, extreme heat, wetness, and humidity, and he must avoid all exposure to unprotected heights and the use of moving machinery. AR 30.

The ALJ determined that Mr. Leblanc could not perform his past relevant work as a plumber. AR 34.

At **step five**, the ALJ found that in light of his age, education, work experience, and residual functional capacity, there are also other jobs that exist in significant numbers in the national economy that Mr. Leblanc can perform: small products assembler; production inspector/checker, table work; and hand packers and packagers, inspector packer. AR 35.

## VI.    Issues for Review

Mr. Leblanc argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly determining Mr. Leblanc's severe impairments; (2) improperly evaluating the medical evidence; (3) improperly calculating Mr. Leblanc's residual functional capacity; and (4) improperly discounting the opinion of the vocational expert.

//

//

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

## VII.   Discussion

### A. The ALJ properly determined Mr. Leblanc's severe impairments.

An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)). An impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)).

In his decision, the ALJ did not mention Mr. Leblanc's diagnosed gastroesophageal reflux disease. Mr. Leblanc asserts this was in error. In particular, he asserts that because of the severity, some side effects could affect his ability to work. ECF No. 15 at 5.[1]

The record does not indicate that Mr. Leblanc has suffered any side effects of gastroesophageal reflux disease since 2001, prior to his alleged onset date. AR

---

[1] The Court respectfully asks that in future filings, counsel include page numbers on each page of submitted briefings, per LR 10.1.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

436-441. Records from February 2001 state that Mr. Leblanc has a "longstanding history of severe reflex" that affect his ability to do plumbing work in crawl spaces.[2] AR 436. Records from April 2001 state that he underwent an "uncomplicated laparoscopic Nissen fundoplication" that appears to have corrected his gastroesophageal reflux disease. AR 440 ("Denies difficulty swallowing and absolutely has no more heartburn and is very pleased."), 441 ("He again is without heartburn and feels quite well since the surgery.")

Mr. Leblanc cites no record that demonstrates his gastroesophageal reflux disease presented a problem following the laparoscopic procedure or during the relevant time period. The record does not support Mr. Leblanc's claims with regard to his gastroesophageal reflux disease diagnosis, and the ALJ did not err by failing to consider this impairment.

**B. The ALJ properly evaluated the medical opinion evidence.**

The ALJ is the "final arbiter" with regard to medical evidence ambiguities, including differing physicians' opinions. *Tommaetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to opinions: (1) treating

---

[2] The ALJ also found that Mr. Leblanc was unable to return to his previous work as a plumber, AR 34, so if this was the only work-related impairment, failure to consider could never be more than harmless error.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

providers; (2) examining providers; and (3) non-examining providers. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

### 1.  The opinions of Drs. McKnight and Hutson

Mr. Leblanc argues that the ALJ erred when he gave the most weight to the opinions of Drs. Thomas McKnight and Richard Allen Hutson. ECF No. 15 at 6-7. These doctors did not examine or treat Mr. Leblanc, but they reviewed all of his records and provided medical testimony at the hearing. Mr. Leblanc does not specify what opinions by Mr. Leblanc's treating and examining physicians are contrary to Drs. McKnight and Hutson's opinions, just that they are in "direct contrast." *Id.* at 7.

Regardless, the ALJ provided specific and legitimate reasons for the weight given to these opinions. He noted that these doctors were the only doctors to

1   review all of the medical evidence in the record, as opposed to limited parts, and

2   their opinions are consistent with the record overall. AR 32.

3       **2.  The opinion of Dr. Talbot**

4       Mr. Leblanc next asserts that it was error to provide differing degrees of

5   weight to give to different portions of Dr. Craig Talbot, M.D., a treating doctor.

6   ECF No. 15 at 7. The ALJ may give less weight to portions that, for example, are

7   inconsistent with the medical record if he provides "specific and legitimate reasons

8   that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.

9       The ALJ gave little weight to the chart notation dated May 14, 2003. AR 32.

10  This notation stated, "At this point, Marc could only work at a job where he is able

11  to sit all day." AR 353. Dr. Talbot specifically noted that no examination was

12  performed at this visit, AR 353, and the ALJ opined that this assertion was not

13  supported by any objective medical findings. AR 32. In fact, much of the

14  limitations and symptoms listed in the notes are not the product of objective

15  medical findings, and often examinations were not even performed. AR 345, 350,

16  353. Thus, it appears from the record that the limitations assessed are based on Mr.

17  Leblanc's subjective complaints.

18      The ALJ is responsible for the determination of credibility and for resolving

19  conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

20  Cir. 1989). The ALJ did perform a credibility assessment of Mr. Leblanc and

1  found that Mr. Leblanc's symptom allegations were not entirely credible. AR 30-

2  31. Mr. Leblanc does not challenge the ALJ's findings. Thus, where the record

3  lacks objective medical evidence and relies solely on subjective testimony, it was

4  not improper for the ALJ to reject this portion of Dr. Talbot's opinion.

5       Further, the record indicates that by February 2004, Dr. Talbot himself had

6  reservations about the subjective complaints of Mr. Leblanc and questioned

7  whether he "is not simply trying to prolong things, perhaps bucking for a financial

8  settlement or long term disability." AR 345. Dr. Talbot further noted that Mr.

9  Leblanc could perform daily chores and he did not appear in pain on any recent

10  visit. *Id.* Taken as a whole, there is substantial evidence in the record to support the

11  ALJ's determination regarding Dr. Talbot's notes from May 2003.

12       **3.  The opinion of Dr. Brewster**

13       The ALJ referred only briefly to Dr. Brewster. AR 33. In his decision, the

14  ALJ compared the limitations imposed by Dr. Brewster in his December 2011

15  letter to those of Christina Casaday, M.Ed., OTR. *Id.* The ALJ specifically did not

16  give weight to Ms. Casaday's recommendations regarding the length of time Mr.

17  Leblanc could sit and walk, but the ALJ does give some weight to her

18  recommendations because of their consistency with other medical reports. *Id.* Dr.

19  Brewster's December 2011 letter provides much less specific limitations than Ms.

20

1  Casaday. AR 408. Dr. Brewster simply recommended against prolonged walking

2  or standing. AR 408.

3     Additionally, the ALJ stated that at times Dr. Brewster recommended

4  sedentary work, but this finding was rejected because it is contrary to the

5  conclusion that light work could be performed. AR 33. This December 2011 does

6  not limit Mr. Leblanc to sedentary work. AR 408. The only limitations on work

7  were restrictions on deep knee bending, kneeling, or squatting; no frequent

8  climbing of ladders; and no prolonged walking or standing. *Id.* This is much later

9  than previous treatment records of Dr. Brewster,[3] and is not inconsistent with the

10  findings of the ALJ.

11     Nevertheless, if there was error with the weight of this opinion, it would be

12  harmless. None of the jobs the ALJ found Mr. Leblanc could perform at step five

13  required significant amounts of walking or standing. *See Molina*, 674 F.3d at 1115

14  (An error is harmless "where it is inconsequential to the [ALJ's] ultimate

15  nondisability determination.")

16   C. **To the extent the ALJ failed to include restrictions on kneeling in Mr.**

17    **Leblanc's residual functional capacity, the error was harmless.**

18     The ALJ included in Mr. Leblanc's residual functional capacity the ability to

19  occasionally crawl. AR 30. Both Drs. Brewster and Talbot recommended

20

---

[3] Mr. Leblanc cites to a record from September 2003, eight weeks after his knee surgery, in which Dr. Brewster recommends sedentary work.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

1  limitations that precluded kneeling due to Mr. Leblanc's left knee condition. AR

2  408, 653. Additionally, the ALJ noted that kneeling limitations were "clearly

3  supported" by the medical record. AR 33.

4        Mr. Leblanc alleges that this limitation was not accounted for in the

5  calculation of his residual functional capacity. ECF No. 15 at 9. While the residual

6  functional capacity does not specifically allow for kneeling, it does allow for

7  crawling. AR 30. Further, the hypothetical posed to the vocational expert at his

8  hearing included a limitation to occasionally kneeling and crawling. AR 80. This is

9  inconsistent with the record and the ALJ's own finding that Mr. Leblanc was

10 precluded by kneeling. AR 33.

11       The Court acknowledges that the record supports a limitation on kneeling,

12 but Mr. Leblanc does not cite to any medical evidence applicable to crawling.

13 Further, the testimony of Dr. Hutson supports occasional crawling. AR 51-52. The

14 ALJ gave great weight to Dr. Hutson's opinion. *See supra* pp. 11-12.

15       Regardless of whether kneeling limitations also encompass crawling, Mr.

16 Leblanc has failed to show that the error prejudiced him. *See Shinseki v. Sanders*,

17 556 U.S. 396, 409–10 (2009) (the burden of showing that an error is harmful

18 generally falls upon the party appealing the ALJ's decision). As the Commissioner

19 detailed in her briefing, the jobs that the vocational expert testified were available

20 to Mr. Leblanc (small products assembler; production inspection/check, table

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

1   worker; and hand packer and packager, inspector-packer) do not require any

2   kneeling or crawling. ECF No. 20 at 4-5.  Further, it is established that "crawling

3   on hands and knees and feet is a relatively rare activity even in arduous work, and

4   limitations on the ability to crawl would be of little significance in the broad world

5   or work. This is also true of kneeling (bending the legs at the knees to come to rest

6   on one or both knees)." SSR 85-15; *see also Mitchell v. Astrue*, 2009 WL 542216

7   at *6-7 (C.D. Cal. 2009).

8        Even if the Court accepts the inclusion of the limitation of occasional

9   crawling as error, the Court will not disturb the ALJ's determination over this

10  harmless error. *Molina*, 674 F.3d at 1111.

11  **D. Any error in failure to account for mental impairments in Mr.**

12     **Leblanc's residual functional capacity is harmless.**

13       At step two, in judging the severity of Mr. Leblanc's medically determinable

14  mental impairments of anxiety and depression, the ALJ found that only minimal

15  limitations on Mr. Leblanc's ability to perform basic mental work activities. AR

16  28. An ALJ must take into account all limitations and restrictions of a claimant

17  when calculating a residual functional capacity. *Valentine v. Comm'r Soc. Sec.*

18  *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (*citing Embrey v. Brown*, 849 F.2d 418,

19  422 (9th Cir. 1988). Despite finding mild limitations in three areas (activities of

20  daily living, maintaining social functioning, and maintaining concentration,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**

persistence, and pace), the ALJ does not address these limitations at all when he calculated Mr. Leblanc's residual functional capacity.[4]

The record and the testimony of Dr. McKnight (AR 58-62) demonstrate that even if this was error, it would be harmless error. Nothing in the record supports impairments that would have anything more than a minimal effect on Mr. Leblanc's functional abilities, and Dr. McKnight's testimony further calls into question whether the impairments were situational and limited in duration. AR 59-62.

More importantly, however, vocational expert testimony demonstrates that even if mental health impairments were added to the residual functional capacity assessed to Mr. Leblanc, only the assembly jobs would be precluded. AR 82-83. Thus, even if the ALJ had included Mr. Leblanc's minimal mental impairments, the record establishes that there would be "unskilled simple repetitive" jobs available to him. *Id.* Any error in not including these mental impairments in the residual functional capacity is harmless because they would not have affected the ultimate finding of disability.

//

//

//

---

[4] The Court also notes that the Commissioner does not address this argument at all in her briefing.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**

**E. The ALJ properly discounted portions of the vocational expert testimony.**

At the hearing, the vocational expert testified that Mr. Leblanc would not be able to maintain competitive employment if he had two to three unexcused absences from work per month. AR 86. The ALJ disregarded this testimony in his final decision. Mr. Leblanc asserts that this was in error because his need to miss multiple days of work per month is supported by the record. ECF No. 15 at 10. However, the evidence Mr. Leblanc points to is insufficient.

First, Mr. Leblanc cites to his own testimony that his back pain requires him to stay home in bed two to three times per month. *Id.* This is subjective symptom testimony. Mr. Leblanc was found to be less than credible by the ALJ, AR 30-31, a finding that Mr. Leblanc does not challenge, and the ALJ was free to disbelieve it. *See Magallanes*, 881 F.2d at 755.

Next, Mr. Leblanc points to testimony by Dr. Hutson that Mr. Leblanc's back problems could involve sciatic nerve root impairment. ECF No. 15 at 10; AR 54-55. Aside from the fact that Dr. Hutson does not definitively conclude that there actually is sciatic root impairment, nothing in Dr. Hutson's testimony supports Mr. Leblanc's assertion that he could not work two to three days per month. AR 54-55. In fact, Dr. Hutson provides a residual functional capacity that does not include any limitations regarding regular work attendance. AR 51-52.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18**

Finally, Mr. Leblanc cites to multiple diagnostic imaging results that "evidence the severity of [his] back impairments." ECF No. 15 at 10. While the record does establish that Mr. Leblanc does suffer back impairments–and the ALJ found these impairments to be severe–there is nothing in this diagnostic imaging evidence that describes the need to lay down two to three times per month. AR 484, 499, 502, 526-31.

The record does not support the limitations alleged by Mr. Leblanc, and they were not included in his residual functional capacity. Because the residual functional capacity is supported by the record, the ALJ was entitled to reject the portion of the vocational expert testimony that was not responsive to those limitations identified in the residual functional capacity. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED.**

    2.  Defendant's Motion for Summary Judgment, **ECF No. 20,** is **GRANTED.**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19

1    3.  The District Court Executive is directed to enter judgment in favor of

2  Defendant.

3    **IT IS SO ORDERED.** The District Court Executive is directed to enter this

   Order, forward copies to counsel and **close the file**.

4

5    **DATED** this 31st day of March, 2016.

6                              _s/Robert H. Whaley_
                              ROBERT H. WHALEY
7                     Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20**